[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties to this administrative appeal include the Plaintiff Latrobe Brewing Company (hereinafter "Latrobe"), the brewer and shipper of Rolling Rock beer products and the Respondents the State of Connecticut, Department of Consumer Protection, Liquor Control Commission (hereinafter "Commission") and City Beverage, Inc. (hereinafter "City"). The Commission is empowered pursuant to General Statutes § 30-6 et seq. with the issuance of permits for and regulation of liquor sale and use. City Beverage has been CT Page 7540 the exclusive wholesaler of Latrobe's Rolling Rock beer products in Windham county, at all pertinent times.
Latrobe, by letter of December 8, 1994, notified City of its intention to appoint an additional distributor for its products in Windham county. City responded with its April 26, 1995 request for a Commission hearing on the proposed action by Latrobe.
The Commission held a hearing on November 2, 1995, concerning the proposal by Latrobe to add an additional wholesale distributor of its product in Windham county.
In its decision of March 28, 1996, the Commission denied the proposal to add an additional Windham county distributor. A beer wholesaler must be licensed pursuant to General Statutes § 30-17.
Latrobe filed this appeal on May 2, 1996. The Record was filed on June 6, 1996. The briefs were filed by Latrobe on September 9, 1996, by the Commission on October 2, 1996, and by City on November 8, 1996. Oral argument was heard on November 20, 1996.
"Proof of aggrievement is an essential prerequisite to the court's jurisdiction of the subject matter of the appeal." Local 1303 Local 1378 v. FOIC, 191 Conn. 173,177 (1983). The Commission in its answer denies Latrobe's aggrievement.
"The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specifically and injuriously affected by the decision.Nader v. Altermatt, 166 Conn. 43, 51 (1974). MysticMarinelife Aquarium, Inc. v. Gill, 175 Conn. 483, 493
(1978)." (Internal quotation marks omitted.) Local 1303 Local 1378 v. FOIC, supra, 191 Conn. 176.
Latrobe has a specific commercial interest in expanding CT Page 7541 the distribution of its product in Windham County. The Commission's decision specifically prevents Latrobe from implementing its business plan to add a wholesale distributor for Windham county. Latrobe is aggrieved by the Commission's decision.
Latrobe brings this appeal pursuant to General Statutes § 4-183. In its brief the Plaintiff pursues alternate legal claims, alleging; (1) The requirement of demonstrating just and sufficient cause [General Statutes § 30-17 (a)(2)] does not apply to the appointment of an additional distributor for the same geographic area as an existing distributor; and/or (2) The provision of § 30-17 (a)(2) requiring manufacturers of beer, but not sellers of alcohol, spirits or wine, to demonstrate just and sufficient cause before being able to appoint a dual distributor impermissibly discriminates between the two classes in violation of the Plaintiff's constitutional rights to equal protection of the law. All other issues raised in the appeal which were not briefed are viewed as abandoned. Collins v. Goldberg,28 Conn. App. 733, 738 (1992).
The facts are not in dispute. Latrobe is a licensed manufacturer and shipper of Rolling Rock beer products to City, a wholesale distributor of such products in Windham county. "Beer" is one of four varieties of "alcoholic liquor" or "alcoholic beverage." General Statutes § 30-1 (3) and (5). The other varieties of alcoholic liquor or beverage consist of alcohol, spirits and wine. General Statutes § 30-1 (2), (3), (18) and (19).
Latrobe provided City with the six month notice as required under General Statutes § 30-17 (a)(2) on December 8, 1994, concerning the appointment of an additional wholesale distributor for Windham county. Latrobe does not allege just and sufficient cause for the appointment of the additional wholesale distributor. Beer, unlike the other varieties of "alcoholic liquor," has a more limited shelf life and is subject to bottle bill mandates. See General Statutes § 22a-245(c) and (d).
The "alcoholic liquor" industry is a uniquely regulated business. General Statutes § 30-1 et seq. "It is to state the obvious to observe that the liquor industry is heavily regulated." Schiefflin Co. v. Department of LiquorCT Page 7542Control, 194 Conn. 165, 180 (1984). A manufacturer or out-of-state shipper of alcoholic liquor is required to obtain a permit, General Statutes §§ 30-16 and 30-19, to register its products' brand names and authorized wholesale distributors, General Statutes § 30-63; to list the prices at which it will sell its product to its wholesalers and is limited in its ability to give rebates, free goods and tie-in sales, General Statutes § 30-94. "These and other provisions of Connecticut statutes relating to credit, advertising, etc., make it apparent that Connecticut intends to and does control the supplying out-of-state shipper . . . to make certain that the owner of the brand name out-of-state shipper cannot dominate or control the Connecticut wholesalers. To promote this latter propose, Connecticut has imposed statutory restrictions on the shipper's ability to terminate the authority of a wholesaler to distribute its products." Brennan, "Liquor Control", 54 Conn. B.J. 611, 613-14.[1]
General Statutes § 30-17, in addition to regulating termination of a wholesaler's franchise, also controls "diminishment" and the appointment of additional wholesalers within the same territory.
In pertinent part General Statutes § 30-17 provides:
 For just and sufficient cause, a manufacturer or out-of-state shipper may appoint one or more additional wholesalers as the distributor for a beer product within such territory. . . . For the purposes of this section, "just and sufficient cause" means the existence of circumstances which, in the opinion of a reasonable person considering all of the equities of both the wholesaler and the manufacturer or out-of-state shipper warrants a termination or a diminishment of a distributorship as the case may be.
The Plaintiff construes the statute as imposing the "just and sufficient cause" requirement only in the instances of termination or geographic diminishment of the wholesaler franchise.
"When we set out to interpret the meaning of a statute our fundamental objective is to ascertain and give effect to CT Page 7543 the apparent intent of the legislature. In seeking to discern that intent we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same subject matter. M. DeMatteo Construction Co. v. New London,236 Conn. 710, 714-15 (1996); see Metropolitan DistrictCommission v. AFSCME, 237 Conn. 114, 120 (1996); State v.Burns, 236 Conn. 18, 22-23 (1996); State v. Spears,234 Conn. 78, 86-87, cert. denied, ___ U.S. ___,116 S.Ct. 565, 133 L.Ed.2d 490 (1995). (Internal quotation marks omitted.) Conway v. Wilton, 238 Conn. 663, 663-64 (1996). Although we first look to the language of the statute, if the application of the statute to a particular situation reveals a latent ambiguity or inconsistency, we will go beyond the text to determine the statute's meaning. Id., 665. Moreover, we will not limit ourselves to a literal application of the statute if to do so would render other legislation meaningless or superfluous. State v.Synkiewicz, 237 Conn. 613, 621 (1996). Castagno v. Wholean,239 Conn. 336, 339-40 (1996). If the legislature had wanted to limit the scope of "diminishment," it could have used the phrase geographic diminishment.
The purpose of the statutory scheme is to protect wholesalers from manufacturer or shipper's domination.[2] The statute in one sentence establishes a "just and sufficient cause" standard for the addition of a wholesale distributor in an existing wholesaler's area. The succeeding sentence defines "just and sufficient cause" in terms of termination or diminishment. Defining diminishment in solely a geographic context would make the preceding sentence superfluous and meaningless. Such a construction is to be avoided. Stratford v. State Board of Mediation Arbitration, 239 Conn. 32, 55 (1996), Stewart v. TunxisService Center, 237 Conn. 71, 79 (1996).
The Commission in construing "diminishment" to encompass market share diminishment correctly applied the law to the facts found in a logical and reasonable manner.New Haven v. FOIC, 205 Conn. 767, 774 (1988). It's construction also gives meaning to the express requirement for "just and sufficient cause," in the circumstance of adding a wholesale distributor. CT Page 7544
The Plaintiff's alternative argument is that § 30-17 as construed by the Commission unconstitutionally, discriminates between beer shippers and other alcoholic liquor shippers. General Statutes § 30-17 (2) imposes the "just and sufficient cause" requirement in the additional wholesaler scenario only on beer shippers.
The Plaintiff's claim is one of equal protection of the law. The equal protection clauses of the United States and Connecticut constitutions have the same meaning and limits.Caldor's Inc. v. Bedding Barn, Inc., 177 Conn. 304, 314
(1979).
In addressing an "equal protection" claim to the identical statute the Connecticut Supreme Court held:
 We judge this claim by the rational basis test Brunswick Corporation v. Liquor Control Commission, [184 Conn. 75, 83 (1981).] Although the fact that the product being regulated is liquor does not qualify individual rights protected by the bill of rights or the fourteenth amendment, Craig v. Borin, 429 U.S. 190, 206, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), reh. denied, 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574 (1977); where the regulation, as in this case, touches upon purely economic matters it is subject to the mildest review under the fourteenth amendment.
Id., 207, Joseph E. Seagram Sons, Inc. v. Hosletter,384 U.S. 35, 47-48, 50-51 (1966). Schiefflin Co. v.Department of Liquor Control, supra, 194 Conn. 186.
In this context a court's function is "to decide whether the classification and disparate treatment inherent in a statute bear a rational relationship to a legitimate state end and are based on reasons related to the accomplishment of that goal. . . . A classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relationship to the object of the legislation, so that all persons similarly circumscribed shall be treated alike." (Citations and internal quotation marks omitted.) Zapata v. Burns,207 Conn. 496, 507 (1988). CT Page 7545
Beer, unlike the other varieties of alcoholic liquor, is subject to the "Bottle Bill." General Statutes §22a-243.[3] General Statutes §§ 22a-245 (c) and (d) impose specific redemption obligations on beer wholesalers within their territory. This obligation would be complicated if not compromised by the introduction of an additional wholesaler in a territory.
Beer unlike other alcoholic liquors has a relatively short shelf life. This spoliation factor present with beer may require greater wholesaler responsibility for product freshness within a territory.
"Legislative efforts to structure and accommodate the burdens and benefits of economic life carry a presumption of constitutionality." Schiefflin Co. v. Department ofLiquor Control, supra 295 Conn. 186.
"While constitutional guarantees are not suspended merely because of the twenty-first amendment to the constitution of the United States . . . that amendment does give the state `virtually complete control over. . . . how to structure the liquor distribution system.' CaliforniaRetail Liquor Dealers Assn. v. Midcal Aluminum, Inc.,445 U.S. 97, 110, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980)."Brunswick Corporation v. Liquor Control Commission,184 Conn. 75, 84 (1981). Plaintiff cites post-Midcal decisions (including Healy v. Bear Institute, Inc., 491 U.S. 324
(1989), which invalidated Connecticut's affirmation statute on alcoholic beverages) overturning various state pricing controls; however, Midcal remains the law with respect to this type of wholesale distribution regulation.
General Statutes § 30-17 (2) requires a showing of "just and sufficient cause" in order to add an additional wholesaler in a geographic area. Latrobe did not establish "just and sufficient cause." The distinctions between beer and other alcoholic beverages, related to shelf life and bottle bill redemption obligations, are sufficient to find a rational basis for the disparate treatment inherent in §30-17. The statute does not deny the Plaintiff equal protection of the law.
The appeal is dismissed. CT Page 7546
Robert F. McWeeny, J.