STRATFORD ARMS COMPANY ET AL. *v.*
TOWN OF STRATFORD
(3744)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued March 12—decision released May 27, 1986

*Matthew B. Woods,* with whom, on the brief, was *Philip Baroff,* for the appellants (plaintiffs).

*Geraldine Ficarra,* with whom were *Richard P. Gilardi* and, on the brief, *Vincent M. Zanella, Jr.,* for the appellee (defendant).

BORDEN, J. The plaintiffs[1] appeal from the trial court's judgment in favor of the defendant, which was rendered on the plaintiffs' complaint, brought pursuant to General Statutes § 12-119, for a reduction in the amount of the assessment and tax on certain real property. The principal issue in this appeal is whether the trial court erred by upholding the defendant's assessment of the property on October 1, 1981, as condominium property when, in fact, the property was not legally declared as condominium property until the following January.[2] We find error.

---

[1] The original complaint was filed by the plaintiffs, the Meadow Court Development Company and the Stratford Arms Company, which were, respectively, the owners of the subject property before and after December 29, 1981. The complaint was amended to add as a plaintiff the Stratford Condominium Association, which is the representative of all of the individual condominium unit owners. The plaintiffs will be referred to by name in this opinion where necessary.

[2] The plaintiffs also claim that the trial court erred by basing its judgment upon evidence contained in a deposition of the defendant's tax assessor which was not included or referred to in the stipulation of facts upon which the case was tried. Because of our disposition of this case, we do not reach this issue.

The parties tried the case on the following stipulation of facts: In October, 1981, the Meadow Court Development Company (Meadow Court) owned property in Stratford on which an apartment building was situated. In the two months immediately preceding October, 1981, the property was advertised for sale as condominiums, a public offering statement was issued and fifteen contracts of purchase were signed. Each of those contracts contained a provision that closing was contingent upon the signing of at least forty-eight purchase and sale contracts and the purchasers' obtaining mortgage commitments. Sales representatives informed the defendant's tax assessor of the selling prices of the individual units and provided him with a copy of the proposed declaration of condominium. The assessed value of the property as apartments on the grand lists of October 1, 1974, through October 1, 1981, calculated at 70 percent of fair market value, was $1,277,830. On October 1, 1981, the defendant's tax assessor valued the property as a condominium by valuing ninety-four separate condominiums, for a total assessment of the ninety-four condominiums of $2,146,280. The assessed value of the property as condominiums was substantially greater than as an apartment building.

The parties further stipulated that on December 29, 1981, Meadow Court deeded the property to the Stratford Arms Company (Stratford Arms) for the consideration of $3,040,000. Prior to January 7, 1982, the property had not been described in a recorded declaration of condominium. On January 7, 1982, Stratford Arms recorded in the Stratford land records a declaration of condominium covering the property. The tax based on the defendant's assessment was paid under protest.

On the basis of these facts, the trial court ruled that pursuant to General Statutes § 12-119 the defendant's assessment of the property as condominiums in the

amount of $2,146,280, was not manifestly excessive and was not arrived at in disregard of the statutory provisions for determining the valuation of such property. The plaintiffs claim that the trial court erred in reaching this conclusion. We agree.

We first note that this is not a case where the owner of the property on October 1, 1981, namely, Meadow Court, has alleged aggrievement by virtue of the defendant's allegedly erroneous valuation of its apartment building. In such a case, Meadow Court's remedy would have been to appeal to the Stratford board of tax review and, thereafter, to the Superior Court pursuant to General Statutes § 12-118. The determinative issue in that case would be whether the assessor's valuation of Meadow Court's apartment building was legally incorrect. See, e.g., *Whitney Center, Inc.* v. *Hamden,* 4 Conn. App. 426, 494 A.2d 624 (1985).

In the present case, Meadow Court, as the owner of record of an apartment building on October 1, 1981, was taxed as the owner of ninety-four separate condominium units, notwithstanding the fact that the property remained as apartments until legally declared as condominiums by Meadow Court's purchaser, namely, Stratford Arms, on January 7, 1982. In this case, the proper remedy is the action initiated by the plaintiffs, pursuant to General Statutes § 12-119, for wrongful assessment. The determinative issue in this case is whether, as a matter of law, the apartment building was subject to taxation as condominium property prior to the date on which it was legally declared as condominiums.

General Statutes § 12-119 provides, in pertinent part, that "[w]hen it is claimed that . . . a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the

provisions of the statutes for determining the valuation of such property, the owner thereof . . . may, in addition to other remedies provided by law, make application for relief to the superior court for the judicial district in which [the property] is situated." There is no dispute that the relevant "provisions of the statutes for determining the valuation of [this] property"; id; are General Statutes §§ 12-62a, 12-63 and 12-64. These provisions essentially provide that the value of property for purposes of tax assessment is to be computed on the basis of the "present true and actual valuation" of that property. See General Statutes §§ 12-62a, 12-63 and 12-64.

Chapter 825, §§ 47-68a through 47-90c, of the General Statutes, entitled the "Condominium Act," governs condominiums created prior to January 1, 1984; see General Statutes § 47-214; and the rights and obligations incident thereto. General Statutes § 47-71 (a) provides that the owner of property "may submit such property to the provisions of this chapter by filing or recording on the land records of the municipality . . . in which the property is located condominium instruments that comply with the provisions of this chapter." General Statutes § 47-71 (b) provides that any declaration of condominium or other condominium instruments "shall not be of legal effect until filed or recorded on [such] land records . . . ." It is clear, therefore, that regardless of any intention or preparatory conduct of a property owner to convert its property to condominiums, the property has no condominium status until proper condominium instruments; see General Statutes § 47-68a (d); are recorded. It follows from this that the property in question in this case could not properly be valued as condominiums as of October 1, 1981, the assessment date, because it simply did not constitute ninety-four condominiums on that date. It was still an apartment building on that date.

This conclusion does not, as the defendant argues, elevate form over substance. In this case, form is substance. Until January 7, 1982, when the declaration of condominium was recorded, the property did not have the enhanced value attributed to it by virtue of its condominium status. Until that date, the owner could not legally convey as condominiums, and thus receive consideration for, any of the units. Thus, the property did not have a value as condominiums on October 1, 1981. Its true and actual value on October 1, 1981, was as an apartment building; its true and actual value as ninety-four condominiums did not and could not arise until January 7, 1982.

We need not decide on this record whether the assessor could have valued the property, as of October 1, 1981, at a figure higher than its previously assessed value because of its proposed conversion to condominiums and because of the sale in late December, 1981, which sale was clearly incident to the conversion to condominium status. Compare *Budney* v. *Ives*, 156 Conn. 83, 88, 239 A.2d 482 (1968) (reasonable probability of change of zone may be considered in determination of fair market value) with *Sheldon House Club, Inc.* v. *Branford*, 149 Conn. 28, 33, 175 A.2d 186 (1961) (property to be valued as of assessment date regardless of intended use). That is not what the assessor did. Nor is that the way in which the case was litigated pursuant to the stipulation of facts. This record limited the trial court to a choice between upholding the assessment of the property as ninety-four condominiums or reducing the assessment to the value assigned to it as an apartment building.

The defendant erroneously relies upon the assumption that the sales prices indicated in the fifteen contracts of sale are relevant matters of record, which they are not. The factual record consists entirely of the stipulation entered into by the parties. That stipulation of

facts does not include the sales prices of those fifteen units. Furthermore, it is irrelevant that certain proposed condominium units had been sold on or before October 1, 1981, because those units remained as apartments until January 7, 1982. At best, those were contingent sales contracts, which could not possibly have been consummated until the contractual conditions had been met and the property had been validly declared as condominiums.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiffs reducing the assessed value of the property to $1,277,830.

In this opinion the other judges concurred.