TOWN OF ENFIELD *v.* AFSCME, COUNCIL 4, LOCAL 1029
(AC 27567)

Schaller, McLachlan and Harper, Js.

Argued December 4, 2006—officially released April 10, 2007

*Stephen F. McEleney*, for the appellant (defendant)

*Gabriel J. Jiran*, for the appellee (plaintiff).

*Opinion*

SCHALLER, J. The defendant, AFSCME, Council 4, Local 1029, appeals from the judgment of the trial court vacating the arbitration award (award) that reinstated the employment of the grievant, James Argenta, as a police dispatcher with the plaintiff, the town of Enfield (town). On appeal, the defendant claims that the court improperly vacated the award of reinstatement on public policy grounds. The plaintiff claims, as alternate grounds for affirmance of the court's judgment, that the arbitration panel improperly (1) failed to designate the issue prior to the arbitration hearing and (2) considered expert testimony. We reverse the judgment of the trial court.

The following factual and procedural history is relevant to our discussion. Prior to the termination of his employment, the grievant had been employed by the plaintiff for eleven years. The town's police department received information that the grievant had been using marijuana and obtained a search warrant for the grievant's home. The grievant accompanied a police captain and other officers to his home and showed them where he kept a small amount of marijuana in his cellar. The

police officers also discovered a collection of drug paraphernalia, which the grievant claimed to have used several years before. The grievant admitted to using marijuana only on an occasional basis but not in front of his children, outside of his home or while on duty. The grievant subsequently entered and successfully completed a pretrial drug education program sponsored by the department of mental health.

The grievant's employment was terminated on January 12, 2004. The grounds for his termination were conduct unbecoming an employee, the knowing association with criminals or persons engaged in unlawful activities and the use of dangerous drugs or narcotics. Pursuant to the collective bargaining agreement between the parties, the matter of the grievant's termination was sent to the state board of mediation and arbitration for an unrestricted arbitration before a panel of three arbitrators. Each party objected to the other's proposed statement of the issue. The panel of arbitrators decided that it would frame the issue at a later time and commenced the arbitration on the merits. After the conclusion of the hearing, which was held on July 23 and August 4, 2004, the arbitration panel issued its decision on May 12, 2005.

The arbitration panel found that, on the basis of his admissions, the grievant had used marijuana in his home. The panel further found that the grievant never used marijuana while on duty and that his use had no impact on his performance at work. It also found that the plaintiff did not consider marijuana to qualify as a "dangerous" drug. Finally, the panel noted that, other than a small announcement in a newspaper, the plaintiff did not suffer any type of negative publicity resulting from the grievant's conduct. The panel concluded: "The gravity of the grievant's offense, when balanced against his flawless work record, cannot be said to satisfy the requirements of the collective bargaining agreement."

The panel ordered that the termination of employment be set aside and that the grievant instead be suspended without pay for a period of five days.[1]

On June 13, 2005, the plaintiff filed, pursuant to General Statutes § 52-418 and Practice Book § 23-1, an application to vacate the arbitration award. The plaintiff alleged that the arbitration award should be vacated because (1) the arbitration panel failed to articulate the issue prior to the close of the hearing, (2) the arbitration panel improperly relied on the testimony of an expert witness and (3) the enforcement of the award was contrary to public policy. On March 24, 2006, the court issued its memorandum of decision vacating the arbitration award on the ground that it violated public policy. Because the court determined that the public policy issue was dispositive, it did not consider the plaintiff's other claims. This appeal followed. Additional facts will be set forth as necessary.

## I

The defendant claims that the court improperly concluded that the award ordering the reinstatement of the grievant violated public policy. We agree with the defendant that, in light of the facts found by the panel, the court improperly determined that the award violated public policy.

As a preliminary matter, we identify the relevant legal principles. "The standard of review relative to arbitration awards depends on the nature of the challenge. With a voluntary, unrestricted submission to an arbitrator . . . the court may only examine the submission

[1] One of the members of the panel indicated that she was "strongly dissenting" from the decision and attached a separate statement of her views. This statement contains numerous additional facts expanding on the details of the grievant's conduct. These statements authored by an individual member of the panel in a solitary capacity do not represent findings made by the arbitration panel.

and the award to determine whether the award conforms to the submission. . . . *In making such a comparison when the submission is unrestricted, the court will not review the evidence* or legal questions involved, *but is bound by the arbitrator's legal and factual determinations.* . . .

"Certain conditions do exist, however, under which we conduct a more searching review of arbitral awards. In *Garrity* v. *McCaskey,* 223 Conn. 1, 6, 612 A.2d 742 (1992), our Supreme Court reiterated that there are three grounds for vacating an award when the submission is unrestricted. These grounds arise when the award (1) rules on the constitutionality of a statute, (2) violates clear public policy or (3) contravenes one or more of the statutory proscriptions of General Statutes § 52-418." (Emphasis added; internal quotation marks omitted.) *Metropolitan District Commission* v. *Local 184,* 77 Conn. App. 832, 838, 825 A.2d 218 (2003).

"[W]hen a challenge to a voluntary arbitration award rendered pursuant to an unrestricted submission raises a legitimate and colorable claim of violation of public policy, the question of whether the award violates public policy requires de novo judicial review. . . .

"The public policy exception applies only when the award is clearly illegal or clearly violative of a strong public policy. . . . A challenge that an award is in contravention of public policy is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award. . . . *Accordingly, the public policy exception to arbitral authority should be narrowly construed* and [a]

court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. . . . *The party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184*, 89 Conn. App. 680, 683–84, 874 A.2d 839, cert. denied, 275 Conn. 912, 882 A.2d 673 (2005).

In the present case, the court initially identified three public policies guiding the resolution of this case. "There is a clear public policy that a police dispatcher be held to the same standard of conduct regulating police officers, which is a higher standard than that required of ordinary governmental employees. There is a clear public policy that a police dispatcher should not engage in the regular use of marijuana over a long period of time, even in his family home, particularly if prohibited by department orders and criminal statutes. There is a clear public policy that a police dispatcher should not maintain regular contacts with a drug dealer by making illegal drug purchases from him over a four year period." The court then concluded that the arbitration award violated the "clear public policy against a police dispatcher regularly engaging in the unlawful use of a controlled substance . . . in clearly felonious conduct over a long period of time." We agree with the court's determination that such a public policy exists.[2]

---

[2] "[P]ublic policy is established by our constitutions, statutes and legal precedents." *South Windsor* v. *South Windsor Police Union*, 41 Conn. App. 649, 658, 677 A.2d 464, cert. denied, 239 Conn. 926, 683 A.2d 22 (1996); see also *Groton* v *United Steelworkers of America*, 254 Conn. 35, 46, 757 A.2d 501 (2000) (refusal to enforce arbitration award limited to situations in which explicit public policy well defined and dominant, and ascertained by

Our state has a well defined public policy against the use of marijuana. See, e.g., General Statutes §§ 21a-278, 21a-279; see also *State* v. *Padua*, 273 Conn. 138, 152–55, 869 A.2d 192 (2005). We therefore must proceed to the ultimate question of whether the arbitration award comports with that public policy or falls within the narrow exception to arbitral authority due to its clear violation of the public policy. See *State* v. *New England Health Care Employees Union*, 271 Conn. 127, 135–36, 855 A.2d 964 (2004).

In *State* v. *AFSCME, Council 4, Local 387, AFL-CIO*, 252 Conn. 467, 477–78, 747 A.2d 480 (2000), our Supreme Court stated: "We do not hold that the violation of a criminal statute is a per se public policy violation sufficient to justify vacating an arbitrator's decision." See also *Board of Police Commissioners* v. *Stanley*, 92 Conn. App. 723, 742 n.16, 887 A.2d 394 (2005); *Private Healthcare Systems, Inc.* v. *Torres*, 84 Conn. App. 826, 832, 855 A.2d 987 (2004), appeal dismissed, judgment vacated, 278 Conn. 291, 898 A.2d 768 (2006). Moreover, this court has stated that the nature of the infractions committed by the grievant must be examined. *State* v. *AFSCME, Council 4, Local 2663, AFL-CIO*, 59 Conn. App. 793, 800–801, 758 A.2d 387, cert. denied, 255 Conn. 905, 762 A.2d 910 (2000). "We consider in cases such as these the nature of the improper act, its severity and the kind of work the employee performs." Id., 803.

In the present case, the court stated that the position of dispatcher is considered a " 'high risk' " or " 'safety sensitive' " position. The court also reasoned that the grievant's "publicized arrest for the use of marijuana followed by his reinstatement would undoubtedly cast doubt over the integrity of and public confidence in the

reference to laws and legal precedents and not from general consideration of supposed public interests); *State* v. *AFSCME, Council 4, Local 387, AFL-CIO*, 252 Conn. 467, 476 n.10, 747 A.2d 480 (2000).

police department." Moreover, it commented that the grievant used marijuana over the course of four years and purchased marijuana from a drug dealer in a neighboring town. Specifically, the grievant associated himself with "criminals or persons engaged in unlawful activities . . . many times over a four year period . . . ." (Internal quotation marks omitted.) According to the court, this exposed the grievant to possible extortion for confidential police information. These statements, however, have no support in the findings made by the arbitration panel. In other words, after comparing the arbitration panel's decision with the court's memorandum of decision, it is apparent that the court engaged in improper fact-finding rather than affording deference to the facts as found by the arbitration panel.

"Our Supreme Court has determined that in reviewing questions of fact in arbitration proceedings, a reviewing court must determine whether there is substantial evidence in the record to support the arbitrators' findings of fact and whether the conclusions drawn from those facts are reasonable. . . . *The limited scrutiny with which we review an arbitration panel's findings of fact dictates that it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the [arbitration panel].*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Board of Police Commissioners* v. *Stanley*, supra, 92 Conn. App. 733–34; see also *Bridgeport* v. *Kasper Group, Inc.*, 278 Conn. 466, 496, 899 A.2d 523 (2006) (*Vertefeuille, J.,* dissenting); *General Motors Corp.* v. *Dohmann*, 247 Conn. 274, 282, 722 A.2d 1205 (1998); *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184*, supra, 89 Conn. App. 686.

It is appropriate, therefore, to identify precisely the findings made by the arbitration panel. The arbitration award stated that the grievant was an eleven year employee whose job performance had been considered

excellent. After learning of the search warrant for his home, the grievant cooperated with police officers and showed them where he had kept a small amount of marijuana in his cellar. He admitted to the occasional marijuana use but stated that he never used it in front of his children, outside of his home or while on duty. The grievant subsequently entered and successfully completed a pretrial drug education program sponsored by the department of mental health.

The defendant conceded that the grievant purchased marijuana and engaged in conduct unbecoming of an employee. The panel, however, did not make any findings regarding the extent or frequency of the grievant's marijuana use. It stated that it did not appear that the grievant ever used marijuana while on duty or that his job performance was negatively impacted. The panel concluded: "The gravity of the grievant's offense, when balanced against his flawless work record, cannot be said to satisfy the requirements of the collective bargaining agreement." We confine our review to the facts as found by the arbitration panel and do not consider the court's extraneous statements.

As a reviewing court, our role is not to decide whether the grievant's use of marijuana violates public policy. Instead, we must determine whether the determination by the arbitration panel to reinstate the grievant runs contrary to an explicit, dominant and well defined public policy. See *Eastern Associated Coal Corp.* v. *United Mine Workers of America, District 17,* 531 U.S. 57, 63, 121 S. Ct. 462, 148 L. Ed. 2d 354 (2000). In answering that question, we are not concerned with whether the award was correct but with whether it violates public policy or whether it can be lawfully enforced. We are mindful that, despite our de novo consideration of the court's decision, the scope of our review is narrowly tailored to reflect our traditional support for arbitration as a favored means of settling disputes. Therefore, in

addressing the claim that an award violates public policy, the award should not be disturbed on that ground unless the award clearly violates a strong public policy. See, e.g., *State* v. *AFSCME, Council 4, Local 387, AFL-CIO*, supra, 252 Conn. 478 (vacating arbitration award on public policy ground constitutes narrow exception to general rule of broad authority of arbitrators). Finally, we acknowledge the public policy of encouraging employers, where possible, to provide opportunities for those who have engaged in criminal conduct. *State* v. *AFSCME, Council 4, Local 2663, ALF-CIO*, supra, 59 Conn. App. 806; see also *State* v. *Parker*, 194 Conn. 650, 663, 485 A.2d 139 (1984) (*Healey, J.*, dissenting).

The plaintiff, as the party moving to vacate the award, bore the burden of proving that it violated public policy. *South Windsor* v. *Police Union Local 1480, Council 15*, 255 Conn. 800, 816, 770 A.2d 14 (2001). We conclude that, on the basis of the findings set forth in the arbitration award and consideration of the various competing policies, the plaintiff failed to carry its burden of proving a clear violation of an established public policy.[3] We emphasize that our conclusion is grounded on the facts as found by the arbitration panel, which, contrary to the court's decision, did not include extensive and chronic marijuana abuse, subjecting the grievant to improper influence or jeopardizing the public's trust in the police department. Rather, the facts establish that the grievant used an illegal substance, cooperated with investigating officers, successfully completed a drug education program and was not convicted of any crime. Moreover, the use of marijuana did not impact the grievant's job performance. Finally, there was no finding that the award had any significant impact on the public confidence in the plaintiff or the police department. In short, we conclude that the court improperly determined that

---

[3] We of course do not approve or endorse the grievant's use of a controlled substance prohibited by our statutes.

the present case fell within the narrow public policy exception to arbitral authority.

## II

The plaintiff presents two alternate grounds for affirming the decision of the court. Specifically, the plaintiff claims that the panel improperly (1) failed to designate the issue prior to the arbitration hearing and (2) considered expert testimony. We do not agree.

## A

The plaintiff's first alternate ground for affirming the court's decision to vacate the award is that the arbitration panel improperly failed to designate the issue prior to the arbitration hearing. Specifically, the plaintiff contends that it was prejudiced by the failure of the arbitrators to define the issue prior to issuing the award.

The following additional facts are necessary for our discussion. The plaintiff proposed that the issue for arbitration was: "Did the [plaintiff] violate Article 13 [disciplinary procedure] of the contract when it terminated the Grievant? If so, what shall the remedy be?" The defendant indicated that the issue should be phrased as "[w]as [the grievant] terminated for just cause and in accordance with the Collective Bargaining Agreement and the Code of Conduct? If not, what shall the remedy be?" The arbitration panel informed the parties that it would frame the issue at a later time.

Section 31-91-35 (b) of the Regulations of Connecticut State Agencies provides: "The parties shall present to the panel prior to proceeding with the merits of the case, a carefully worded statement of the issue or issues in dispute between them on which the board is requested to rule. Where the parties are unable to agree upon the issue or issues to be decided, the panel shall frame the issue or issues prior to proceeding to the merits of the case."

In its award, the arbitration panel adopted the defendant's statement of the issue. The parties subsequently stipulated that neither party raised an objection to proceeding with the case despite the failure to frame the issue.[4] The question of whether the issue was framed properly was not raised again during the arbitration proceeding.

We conclude that the plaintiff waived any claim regarding the panel's failure to frame the issue before proceeding to the merits. Although the plaintiff objected to the language contained in the defendant's proposed statement of the issue, it is undisputed that the plaintiff never objected to proceeding to the merits after the panel indicated that it would identify the issue at a later time.

"Our Supreme Court has recognized two procedural routes by which a party may preserve the issue of the arbitrability of a particular dispute for judicial determination. First, a party may refuse to submit to arbitration at the outset and instead compel a judicial determination of the issue of arbitrability. . . . Alternatively, threshold questions of arbitrability may properly be committed to the arbitrators themselves for determination under the terms of the contract, along with the merits of the underlying dispute. . . . In such cases a court, on a motion to vacate, may properly entertain a challenge to an award alleging disregard of the limits in the parties' agreement with respect to arbitration. . . . *White* v. *Kampner*, 229 Conn. 465, 476, 641 A.2d 1381 (1994)." (Internal quotation marks omitted.) *MBNA America Bank, N.A.* v. *Boata*, 94 Conn. App.

---

[4] The parties' stipulation of facts provides in relevant part: "Neither party raised an objection to proceeding with the case in the absence of an issue and neither party cited to the regulation(s) of the State Board of Mediation and Arbitration in regard to the framing of the issue." The stipulation further indicated that the arbitration panel did not request a waiver, nor did either party expressly waive any possible procedural infirmity.

559, 564–65, 893 A.2d 479, cert. granted on other grounds, 278 Conn. 912, 899 A.2d 38 (2006); *JCV Investment Group, Inc.* v. *Manjoney*, 56 Conn. App. 320, 323, 742 A.2d 438 (2000).

In the present case, the plaintiff failed to avail itself of either of the procedural routes mentioned in *White.* Instead, the plaintiff elected to proceed with the arbitration and did not raise any objection to the panel's failure to frame the issues until after it had received an unfavorable result. Our Supreme Court has held that it will not "allow parties to forego objections to arbitration, gambling upon a favorable result and, when losing, to raise the procedural defects in a motion to vacate." *Waterbury Board of Education* v. *Waterbury Teachers Assn.*, 168 Conn. 54, 63, 357 A.2d 466 (1975); see also *New Britain* v. *Connecticut State Board of Medicine & Arbitration*, 178 Conn. 557, 561, 424 A.2d 263 (1979); *MBNA America Bank, N.A.* v. *Boata*, supra, 94 Conn. App. 565; see generally *Krattenstein* v. *G. Fox & Co.*, 155 Conn. 609, 616, 236 A.2d 466 (1967) (Appellate courts "will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial. We repeatedly have indicated our disfavor with the failure . . . to object to errors [until] it is too late for them to be corrected, and thereafter, if the outcome . . . proves unsatisfactory, with the assignment of such errors as grounds of appeal." [Internal quotation marks omitted.]). We conclude therefore, that the plaintiff, by failing to object timely to the panel's consideration of the merits of the arbitration, waived any claim regarding the panel's failure to frame the issue as set forth in § 31-91-35 (b).[5]

---

[5] We note that the plaintiff does not claim that the arbitration panel was deprived of subject matter jurisdiction by failing to frame the issue prior to its consideration of the merits of the arbitration. Moreover, on the basis of our review of the entire record, we conclude that the plaintiff did not suffer any prejudice as a result of the panel's actions. It is clear that both

## B

The plaintiff's second alternate ground for affirming the court's decision to vacate the arbitration award is that the panel improperly considered expert testimony. Specifically, the plaintiff contends that the panel improperly allowed testimony from an expert witness who was not qualified to make certain statements regarding marijuana, thereby causing prejudice to the plaintiff. We do not agree.

The following additional facts are necessary for our discussion. The defendant produced an expert witness at the hearing, attorney Richard O'Neil. O'Neil, who had served six years with the Enfield police department before being admitted to the bar, "testified, credibly, that marijuana is not considered by our courts to be 'dangerous' . . . ." O'Neil further stated that marijuana is "less 'dangerous' " than alcohol.

On appeal, the plaintiff argues that O'Neil was improperly determined to be an expert witness with respect to his statements regarding marijuana. The plaintiff further claims that this improper classification of O'Neil as an expert constituted grounds pursuant to § 52-418 (a) (3) to vacate the award.[6] We conclude that the plaintiff has failed to establish substantial prejudice as a result of the panel's ruling.

---

parties were aware that the issue was whether the termination of the grievant's employment by the plaintiff was proper in light of the collective bargaining agreement. Finally, it is apparent that the issues submitted by the parties, despite the use of different language, set forth essentially the same matter for the arbitration panel.

[6] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects . . . (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced . . . ."

"The scope of judicial review in an arbitration action is expressly limited by the terms of § 52-418. . . . In the absence of a showing of a violation of the statute, the courts should not interfere in the arbitral decision." (Citation omitted.) *Metropolitan District Commission v. AFSCME, Council 4, Local 184*, 237 Conn. 114, 118, 676 A.2d 825 (1996). We note that our Supreme Court has stated: "Because we favor arbitration as a means of settling . . . disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . . Furthermore, in applying this general rule of deference to an arbitrator's award, [e]very reasonable presumption and intendment will be made in favor of the [arbitral] award and of the arbitrators' acts and proceedings." (Citation omitted; internal quotation marks omitted.) *Industrial Risk Insurers v. Hartford Steam Boiler Inspection & Ins. Co.*, 258 Conn. 101, 114, 779 A.2d 737 (2001).

"Additionally, to vacate an arbitrator's award on the ground of misconduct under § 52-418 (a) (3), the moving party must establish that it was substantially prejudiced by the improper ruling. . . . This requirement that the moving party establish substantial prejudice is consistent with the showing that this court requires to order a new trial when a trial court makes an improper evidentiary ruling in a civil trial. . . . In such cases, a new trial will be ordered only when the improper evidentiary ruling [likely] would [have] affect[ed] the result." (Citations omitted; internal quotation marks omitted.) *Bridgeport v. Kasper Group, Inc.*, supra, 278 Conn. 476–77. Put another way, "[t]he application of that provision [of § 52-418 (a)] does not result in the vacation of an award merely because an arbitration panel may have made incorrect evidentiary rulings." *AFSCME, Council 4, Local 3144 v. New Haven*, 81 Conn. App.

532, 536, 840 A.2d 1205, cert. denied, 268 Conn. 924, 848 A.2d 472 (2004).

In the present case, we cannot conclude that the plaintiff established substantial prejudice as a result of the panel's consideration of O'Neil's opinion. Although the award concluded that the grievant was not on notice that marijuana qualified as a "dangerous drug," that finding was based not only on O'Neil's testimony but on the absence of any authority supplied by the plaintiff. Moreover, the award was premised on the panel's finding that the grievant's offense, when balanced against his exemplary work record, did not warrant termination of employment. In making that determination, the panel considered, in addition to whether marijuana was a "dangerous drug," the fact that the grievant's use was confined to the home, that it did not negatively impact his employment performance and that the plaintiff did not suffer any negative effects other than a "miniscule amount of press coverage." Mindful of our limited standard of review, we conclude that the plaintiff failed to establish the substantial prejudice as required by § 52-418 (a) (3) as a result of the arbitration award.

The judgment is reversed and the case is remanded with direction to render judgment denying the plaintiff's application to vacate the arbitration award.

In this opinion the other judges concurred.